UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN S. OATES,

       Plaintiff,

v.                              Case No.  8:12-cv-908-T-33TGW

WALGREEN COMPANY,

       Defendant.

_____/

**ORDER**

John Oates, a pharmacist suffering from knee arthritis and other ailments, claims that his receipt of long-term disability benefits as provided by his employer, Walgreen Co. ("Walgreens") pursuant to an ERISA Plan was unlawfully terminated by the Plan's Claim Administrator.  The Court has reviewed the 715 page administrative record and, after so doing, affirms the finding that Oates is no longer entitled to long-term disability benefits.

I.    **Factual Background**

    A.   **Oates Participates in an ERISA Plan**

Walgreens offers its pharmacists, including Oates, a disability plan known as the Walgreen Income Protection Plan for Pharmacists and Registered Nurses.  It is not disputed that the Plan is governed by the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

The Plan provides short-term and long-term disability benefits to qualifying employees. (AR 624).[1]  Only long-term disability benefits are at issue in this matter. The Summary Plan Description is before the Court (AR 617-640), and it defines "disabled" or "disability" as follows:

> For the long-term disability period . . . due to sickness, pregnancy, or accidental injury, you are prevented from performing one or more of the essential duties of your own occupation and are receiving appropriate care and treatment from a doctor on a continuing basis; and
> - for the first 18 months of long-term benefits, you are unable to earn more than 80% of your pre-disability earnings or indexed pre-disability earnings at your own occupation from any employer in your local economy; or
> - following that 18 month period, you are unable to earn more than 60% of your indexed pre-disability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified, taking into account your training, education, experience, and pre-disability earnings.

(AR 624).

The costs for the Plan are paid entirely by Walgreens. (AR 621).  In addition, Walgreens pays the benefits provided through the Plan, and Walgreens is designated the "Plan Administrator." (AR 624, 638).  As defined in the Plan, Sedgwick Claims Management Services, Inc. is the "Claim Administrator," and makes benefits determinations. (AR 624,

---

[1] References to "AR" are to the administrative record filed on August 1, 2012.

-2-

638; Craig Decl. Doc. # 37-1 at ¶¶ 3-4).  Sedgwick "has no corporate relationship to Walgreens." (Craig Decl. Doc. # 37-1 at ¶ 3).  "Under the Plan, Sedgwick performs claims evaluations and makes determinations on specific claims under the Plan.  Walgreens only provides information regarding the general eligibility for Plan benefits and regarding the duties and compensation of Walgreens employees participating in the Plan so as to allow Sedgwick to make claims decisions regarding whether an employee is disabled and as to the amounts of disability benefits." (Id. at ¶ 3).  In addition, "[a]ll medical reviews in the claims appeal process are conducted by independent physicians or other health care professionals retained by Sedgwick.  Walgreens has no role in the selection or retention of these reviewing medical personnel." (Id. at ¶ 4).

### B.  Oates Receives Disability Benefits for Two Years

Oates, a pharmacist, applied for and was granted short-term disability benefits due to pain in his knees and back on May 22, 2009. (AR 541-542).  Oates received these benefits for 180 days, which is the maximum duration for such benefits under the Plan. (AR 541, 542, 529).

On December 16, 2009, Sedgwick long-term disability examiner Scott Sturm sent Oates a letter advising Oates that

his claim for long-term disability benefits was approved and "became payable as of November 18, 2009, through January 31, 2010." (AR 529-530).   In this letter, Sturm provided Oates with the Plan's definition of "disability;" informed Oates that he was required to apply for Social Security Disability benefits as outlined in the Plan; and advised Oates that continued receipt of long-term disability benefits was contingent upon Oates's supplying additional medical documentation. Id.

Sedgwick's approval of Oates's initial application for long-term disability benefits was based on the reports of two independent, Board Certified physicians: Dr. Martin Mendelssohn and Dr. Jamie Lewis.   Both physicians found that Oates was not capable of performing his *own work* as a pharmacist as of August 22, 2009, due to degenerative arthritis in his knees and back. (AR 192-205, 529-542).   These physicians noted limitations in walking, standing, bending, and reaching. Id.

However, these physicians concluded that Oates was capable of performing a sedentary occupation and was, thus, not disabled under the *any occupation* definition of disability under the Plan. (AR 192-205).   Specifically, Dr. Mendelssohn, a Board Certified orthopedic surgeon, opined that Oates's ailments "would not preclude him from a sedentary occupation."

-4-

(AR 192).  Dr. Lewis, Board Certified in Physical Medicine and Rehabilitation and Board Certified in Pain Medicine, similarly determined that Oates "would not be reasonably capable of performing continuing walking and standing secondary to the degenerative pathology in the knees, torn meniscus and limited range of motion" but limited his conclusion to Oates's "current position" as a pharmacist. (AR 194).

Oates's receipt of long-term disability benefits continued until May 21, 2011.  During this time period, Oates submitted medical documentation from his treating physician Dr. Richard Sweeney, a Family Physician, and Chiropractor David R. Puentes.  Among other relevant office visit notes, the record contains Dr. Puentes' May 18, 2010, note that "with treatment [Oates] is better however, [he] still fatigues with weakness into lower extremies [and] is unable to stand for any period of time without experiencing numbness and weakness into the lower extremies." (AR 502).

Dr. Sweeney's September 2, 2010, office visit note however, states that Oates "suffers from chronic severe pain; limitations of motion of his knees, back, hands; cognitive function; and he has had a tender painful left foot which is chronic." (AR 480).  Dr. Sweeney remarked that Oates's medications include: "Soma, Benicar HCT, Xanax, Protonix, Celebrex, Synthyroid, Combivent, Nexium, Lortab, and Zoloft."

<u>Id.</u>   Dr. Sweeney indicated that Oates's "restrictions and limitations" included "no standing long term, no heavy lifting, no critical thinking due to side effects of medications, which he takes for his anxiety, depression and chronic pain.  He cannot do repetitive hand motion due to severe spasm and pain in his hands." <u>Id.</u> Dr. Sweeney thus concluded: "I have declared him permanently and totally disabled from any job. He is unable to complete any job at this time, nor unfortunately do I feel he would be safe to do any in the future." <u>Id.</u>

**C.  <u>Oates is Awarded Social Security Disability Benefits</u>**

The Plan contained the requirement that Oates apply for Social Security Disability Benefits. (AR 625-626).  The Plan specifically states, "You are required to apply for all other income benefits for which you are eligible and to appeal any other income claim denial.  If you fail to do so, your benefits under the Income Protection Plan will be reduced by the estimated amount of the Primary Offset Benefit you could have received if your claim had been approved.  Your benefits may be withheld entirely until you do apply for the offset benefit, including appeals." (AR 626).  The Plan noted "Your benefits under this plan will be reduced by the amount of

benefits you are eligible to receive from other sources, such as Social Security." Id.

Oates did apply for Social Security Benefits and was in fact granted such benefits. The Social Security Administration indicated in a letter to Oates:

> You are entitled to monthly disability benefits beginning November 2009. . . . You will receive $38,496.00 around March 6, 2011. This is the money you are due for November 2009 through February 2011. Your next payment of $2,406.00, which is for March 2011 will be received on or about the fourth Wednesday of April 2011. After that you will receive $2,406 . . each month.

(AR 435).

### D. Oates's Long-Term Disability Benefits are Terminated

As noted, Oates enjoyed a less stringent definition of "disability" under the Plan for the first 18 months of his receipt of long-term disability benefits. However, after the first 18 months, the Plan definition of "disabled" changed from being "unable to earn more than 80% of your pre-disability earnings or indexed pre-disability earnings at *your own occupation*" to being "unable to earn more than 60% of your indexed pre-disability earnings from any employer in your local economy at *any gainful occupation* for which you are reasonably qualified, taking into account your training,

education, experience, and pre-disability earnings." (AR 624)(emphasis added).

On January 11, 2011, Sturm advised Oates that a change in the applicable definition of disability from "your own occupation" to "any gainful occupation" was on the horizon, and sent Oates various forms to complete.  On one such form, Oates indicated that he was able to drive, shop, fish, view movies, and use a computer on a daily basis. (AR 444-445).

In addition, Sturm referred Oates's file for an independent Transferable Skills Analysis to be performed by Certified Rehabilitation Counsel James Percic (AR 429-433; 563).  Percic considered Dr. Sweeney's medical opinion as well as other medical data.  Percic listed Oates's "transferable skills" as "knowledge of drugs and drug interactions, basic medical knowledge, customer service skills, good communication skills, supervisory skills, good arithmetic skills, organizational ability, computer skills, typing skills, and good judgment and decision-making skills." (AR 430).

Percic noted that Oates would be able to "work in a sedentary or light physical exertion level occupation" and identified the following as "vocational alternatives:" "Manager, Professional Equipment Sales-and-Service; Manager, Department; Director, Service; Quality-Control Coordinator; Pharmaceutical Detailer." (AR 432).  The annual salaries for

-8-

these identified positions ranged from $162,510.40 to $72,820.80. (AR 433). Percic based his report on employment opportunities available in Polk County, Florida where Oates resides.  Id.

On May 26, 2011, based on Percic's Transferable Skills Analysis and the previously supplied opinion of Dr. Mendelssohn, Sedgwick terminated Oates's long-term disability benefits effective May 22, 2011. (AR 564).

### E.   Oates Participates in the Plan Appeals Process

On July 25, 2011, counsel for Oates sent Sturm a letter stating his disagreement with Sedgwick's decision to terminate benefits and supplying Sedgwick with additional medical documentation, including a letter from Dr. Sweeney and the Social Security Administration Independent Medical Evaluation report prepared by Dr. Morris Kutner. (AR 423-428). Sedgwick construed the July 25, 2011, letter as a request for a first-level appeal of the decision to terminate long-term disability benefits. (AR 567-570).

As a part of that first-level appeal, Regina Crenshaw-Winfield, Sedgwick Appeals Specialist, referred Oates's claim for independent medical review to two physicians: Dr. Siva Ayyar, Board Certified in Occupational Medicine and Dr. Moshe Lewis, Board Certified in Physical Medicine and

Rehabilitation.    Both  of  these  physicians  completed  an independent  review  of  Oates's  file  based  on  Oates's  entire medical  file,  including  the  documents  generated  by  Dr. Sweeney,  Dr.  Kutner,  and  Dr.  Puentes--the  three  physicians Oates  relied  upon  in  his  attempt  to  substantiate  entitlement to  long-term  disability  benefits.    Both  Dr.  Lewis  and  Dr. Ayyar  filed  reports  on  September  20,  2011,  finding  that  Oates was  not  precluded  from  engaging  in  gainful  employment.

Dr.  Lewis  specifically  noted  that  Oates  was  "not  disabled from  the  ability  to  perform  any  occupation  for  which  he  may  be qualified  by  education,  training,  or  experience  as  of 05/22/11."  (AR  363).    Dr.  Lewis  noted  that  Oates  "would  be limited  in  his  ability  to  stand  or  walk  for  prolonged  periods" but  found  that  "there  is  no  evidence  to  support  complete inability  to  work."  Id.    Dr.  Lewis  suggested  that  Oates consider  sedentary  work.  Id.

Dr.  Ayyar  reached  the  same  conclusion:

While  [Oates]  may  indeed  have  chronic  bilateral
knee  osteoarthritis  that  limits  his  ability  to  work
in  his  usual  and  customary  occupation  as  a
pharmacist,  he  is  certainly  not  disabled  from  any
and  all  occupations  for  which  he  may  be  qualified
by  education,  training,  or  experience  during  the
timeframe  in  question,  05/22/11  through  the
present.

(AR  369).    Dr.  Ayyar  likewise  determined  that  Oates  could perform  sedentary  work.  Id.

Based on the reports of Dr. Lewis and Dr. Ayyar, as well as Percic's transferable skills analysis, Sedgwick upheld its termination of Oates's long-term disability benefits. (AR 336-339).  Sedgwick advised Oates that he could request a second-level appeal of the termination of such benefits. (AR 339).

On January 9, 2012, Oates requested a second level appeal of Sedgwick's decision. (AR 310-313).  Through counsel, Oates submitted additional documentation from Dr. Sweeney and Dr. Puentes as well as a Vocational Evaluation and Transferable Skills Analysis from Disability Specialist Gerri Pennachio. (AR 295-307; 310-313).  Included in  Pennachio's report is a notation that Oates spends his days running errands, watching television, surfing the internet, going fishing and hunting, drinking 8-10 beers daily and smoking in excess of one pack of cigarettes daily. Id. (AR 303).

As a part of Oates's second level appeal, Sedgwick referred Oates's claim for review by three independent physicians: Dr. Marie-Claude Rigaud, Dr. Richard Kaplan, and Dr. Phillip Marion.  Each of these physicians reviewed Oates's entire file and determined that Oates was not disabled.

Specifically, Dr. Rigaud, a Board Certified Psychiatrist, indicated, "From a strictly psychiatric perspective, it is my professional opinion, based on available information that the claimant was not disabled from the ability to perform any

occupation for which he may be qualified by education, training, or experience as of May 22, 2011." (AR 257). Dr. Rigaud also noted that, while Dr. Puentes reported that Oates was "lethargic" and "loopy," Dr. Puentes failed to assess "the possible effects or clinical significance of the consumption of eight to ten beers daily on the claimant's overall functioning." (AR 259).

Dr. Kaplan and Dr. Marion, both Board Certified in Physical Medicine and Rehabilitation, likewise determined that Oates was not disabled.   Dr. Kaplan indicated that "the records do not indicate that this claimant would be disabled from doing any occupation." (AR 267).  Dr. Marion found that Oates was "not disabled, he is able to work full time at the sedentary job level." (AR 276).

Sedgwick thus upheld its decision to terminate Oates's benefits at the second-level review phase and communicated the same to Oates via letter dated February 21, 2012. (AR 239-244).

### F.   Oates Files his ERISA Complaint

Oates filed an ERISA action against Walgreens on April 25, 2012. (Doc. # 1). Walgreens filed its Answer on June 11, 2012. (Doc. # 12). On July 9, 2012, Walgreens filed its Motion for an ERISA Scheduling Order "to limit discovery in this

action to the administrative record." (Doc. # 16).   This Court held a hearing on the Motion for an ERISA Scheduling Order July 19, 2012.   During that hearing, the parties addressed the issue of whether a conflict of interest existed due to Walgreens's role as the Plan Administrator and the party paying for disability benefits.   Counsel for Walgreens explained the separate role of the Plan Administrator (Walgreens) and the Claim Administrator (Sedgwick):

> The [C]laims Administrator runs the Plan.   If there's a unique situation that comes up, like, well, I don't know how much this guy worked, maybe he doesn't qualify for the Plan.   That's when the Plan Administrator comes in, and it's only after there's appeals process . . . . It's only after the second round.   Here, there's no allegation in the complaint that there was a unique situation, [a] factual scenario that needed the Plan Administrator to be involved.   Walgreens simply paid, Sedgwick ran the appeals.   And that's why we believe there's no conflict.

(Doc. # 29 at 16).

On July 26, 2012, the Court entered an Order pursuant to the hearing designating this case as a Track One case, allowing limited discovery, setting a timetable for the parties to file memoranda of law, and directing Walgreens to file the administrative record. (Doc. # 24). Walgreens filed the administrative record on August 1, 2012. (Doc. # 27). Thereafter, on October 5, 2012, Oates filed a Motion for Clarification (Doc. # 28) regarding the standard of review

applicable in this ERISA case.  On November 6, 2012, the Court granted the Motion for Clarification as follows: "the Court now clarifies its conclusion that no conflict of interest exists and that the arbitrary and capricious standard applies in this case."  (Doc. # 33).  Each party has filed a memorandum of law regarding Oates's entitlement to long-term disability benefits. (Doc. ## 34, 37).

**II.   <u>Legal Standard</u>**

As set forth in <u>Blankenship v. Metropolitan Life Insurance Company</u>, 644 F.3d 1350 (11th Cir. 2011), the Court conducts the following review of an ERISA benefits determination:

> (1)  Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2)  If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial injury and reverse the decision.
>
> (3)  If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Id. at 1355.

The Court's analysis "centers on assessing whether a reasonable basis existed for the administrator's benefits decision." Id. See also Conkright v. Frommert, 130 S. Ct. 1640, 1651 (2010)("the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'")(quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)).

## III. **Analysis**

### A. **The Claim Administrator's Decision was Not Wrong**

In determining whether Sedgwick's decision was "wrong," the Court "stand[s] in the shoes of the administrator and start[s] from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." Stiltz v. Metro. Life Ins. Co., No. 105-cv-3052-TWT, 2006 U.S. Dist. LEXIS 65394, at *18 (N.D. Ga. Aug. 30, 2006), Aff'd, 244 F. App'x 260 (11th Cir. 2007).  "A decision is 'wrong' if, after a review of the decision of the administrator from a de novo perspective, the court disagrees

with the administrator's decision." <u>Glazer v. Reliance
Standard Life Ins. Co.</u>, 524 F.3d 1241, 1246 (11th Cir. 2008).
Furthermore, "[t]he court must consider, based on the record
before the administrator at the time its decision was made,
whether the court would reach the same decision as the
administrator.  If the court determines that the plan
administrator was right, the analysis ends and the decision is
affirmed." <u>Id.</u>  Even if the Court finds that Sedgwick's
benefits decision was wrong, under the arbitrary and
capricious standard, a decision will still be upheld if it is
grounded in any reasonable basis. <u>Conkright</u>, 130 S. Ct. at
1651.

Oates asserts that the termination of long-term
disability benefits was wrong because Sedgwick ignored various
doctors' reports purporting to find Oates totally disabled, as
well as the Social Security Administration's award of
disability benefits.  Oates also contends that Sedgwick failed
to follow technical Plan requirements regarding the timing of
its decision.  The Court has given careful consideration to
these contentions and determines that they are unavailing as
outlined below.

### 1.   <u>Treating Physicians</u>

Oates highlights favorable passages from his treating physicians' and Disability Specialists' reports, and contends that Sedgwick ignored this information in making its decision to deny benefits.   As argued by Walgreens, "Oates urges the Court to simply pick his physicians' and specialists' opinions over those of the independent medical reviewers retained by Sedgwick." (Doc. # 37 at 22).   That is not the role of the Court.   The record reflects that the Claim Administrator appropriately relied upon the reports of independent physicians who conducted a complete review of Oates's file.[2]

Dr. Mendelssohn determined on November 23, 2009, that Oates was not precluded "from a sedentary occupation or a light physical exertion level." (AR 192).   Percic found in his Transferable Skills Analysis on May 20, 2011, that Oates was not precluded from gainful employment and that there was "no documentation beyond Dr. Sweeney's statement that there are cognitive issues that would affect critical thinking sufficiently to negatively impact the performance of a job." (AR 429-433).   Dr. Lewis found on September 20, 2011, that

---

[2]   These independent experts were not required to physically examine Oates, and their failure to do so does not render their opinions invalid. See Richey v. Hartford Life and Accident Ins. Co., 608 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009) ("An ERISA administrator is entitled to rely on the opinion of a qualified consultant who neither treats nor examines the claimant, but instead reviews the claimant's medical records.").

Oates "was not disabled from the ability to perform any occupation for which he may be qualified by education, training, or experience." (AR 363). Dr. Ayyar determined on September 20, 2011, "While [Oates] may indeed have chronic bilateral knee osteoarthritis that limits his ability to work in his usual and customary occupation as a pharmacist, he is certainly not disabled from any and all occupation for which he may be qualified . . . [he can] do a sedentary type of work." (AR 369). Dr. Rigaud determined on February 7, 2012, that Oates was not disabled from a "psychiatric perspective." (AR 257). Dr. Kaplan found on February 7, 2012, that the "records do not validate that [Oates] is disabled from performing any occupation." (AR 267). Finally, Dr. Marion indicated on February 7, 2012, that Oates was "able to work full time at the sedentary job level." (AR 276).

The aforementioned findings, individually and collectively, represent a reasonable basis for the termination of Oates's long-term disability benefits. That Dr. Sweeney, Dr. Puentes, and Pennachio considered Oates disabled does not make Sedgwick's reliance on the independent physician's reports improper. It is well established that a claim administrator may rely on independent medical examiners, and there is no requirement that a claim administrator afford greater weight or deference to treating physicians than to

independent physician reviewers. <u>See</u> <u>Black & Decker Disability</u> <u>Plan v. Nord</u>, 538 U.S. 822, 834 (2003)("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); <u>Townsend v. Delta</u> <u>Family-Care Disability & Survivorship Plan</u>, 295 F. App'x 971, 978 (11th Cir. 2008)("[P]lan administrators are not required to give greater weight to the submissions of a treating physician than to other reliable evidence."); <u>Wilkins v.</u> <u>Sedgwick Claims Mgmt. Servs., Inc.</u>, No. 8:09-cv-1009-T-26TGW, 2010 U.S. Dist. LEXIS 42971, at *14 (M.D. Fla. May 3, 2010)(same); <u>Stenner-Muzyka v. Unum Life Ins. Co. of Am.</u>, No. 8:04-cv-984-T-17TBM, 2005 U.S. Dist. LEXIS 23401, at *6 (M.D. Fla. July 7, 2005)(same).

Furthermore, the record reflects that--far from ignoring the reports of Oates's treating physicians--the reviewing physicians considered the reports supplied by Oates's treating physicians and consulted with the treating physicians.  For instance, the reports of Dr. Ayyar and Dr. Marion reflect that they each engaged in a telephone call with Dr. Sweeney. (AR 366, 277).  Likewise, Dr. Rigaud's report indicates that she personally spoke with Dr. Puentes. (AR 258-261).  Furthermore,

-19-

Dr. Kaplan's report reflects that he spoke with both Dr. Sweeney and Dr. Puentes. (AR 268-271).

It was soundly within Sedgwick's discretion to credit the evidence from the independent medical reviewers over the opinions of Oates's treating physicians and specialists in denying benefits and throughout the appeal process.

### 2.   Social Security Administration Determination

Oates also contends that Sedgwick's benefits determination was wrong because Sedgwick failed to consider that Oates was found to be disabled by the Social Security Administration.  Oates specifically asserts that an award of long-term disability benefits is required based on Metro Life Insurance Company v. Glenn, 554 U.S. 105, 118 (2008).

In Glenn, a plan participant with a heart condition appealed the plan administrator's denial of long-term disability benefits to the district court.  The district court found in favor of the plan administrator, however, the Sixth Circuit set aside the plan administrator's denial of benefits based on: (1) the plan administrator's conflict of interest; (2) the plan administrator's failure to reconcile its own conclusion that the plan participant could not work in other jobs with the Social Security Administration's determination that the plan participant could not; (3) the plan

administrator's focus on one treating physician's report suggesting that the plan participant could work, at the expense of other, more detailed treating physicians' reports; (4) the plan administrator's failure to provide the plan participant's treating physicians' reports to its hired expert; and (5) the plan administrator's failure to take into consideration that stress aggravated the plan participant's condition.

With respect to the plan participant's entitlement to Social Security benefits, the Court indicated: "the [Sixth Circuit] found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding." Id. at 118.   The Court found "nothing improper in the way in which the [Sixth Circuit] conducted its review." Id.

The Court agrees with Oates that Glenn is an important and relevant decision.  Despite some factual similarity with the present case, however, the Glenn decision does not mandate an award of long-term disability benefits to Oates.  The Glenn decision does not stand for the proposition that the Social Security Administration's disability determinations are

-21-

binding on ERISA plan administrators. The <u>Glenn</u> Court affirmed the Sixth Circuit's consideration of the Social Security Administration's award of benefits as one factor, among many, that is relevant to the court's review.

In cases decided after <u>Glenn</u> was handed down and citing to <u>Glenn</u>, the Eleventh Circuit has maintained that the approval of disability benefits by the Social Security Administration is not considered dispositive on the issue of whether a claimant is disabled under an ERISA plan. <u>See</u>, <u>e.g.</u>, <u>Ray v. Sun Life & Health Ins. Co.</u>, 443 F. App'x 529, 533 (11th Cir. 2011)("[W]hile approval of Social Security benefits may be considered, it is not conclusive on whether a claimant is also disabled under the terms of an ERISA plan."). In addition, the Eleventh Circuit has affirmed the denial of disability benefits in the instance of an award of disability benefits by the Social Security Administration in post-<u>Glenn</u> ERISA cases. <u>See</u>, <u>e.g.</u>, <u>Gipson v. Admin. Comm. of Delta Air Lines, Inc.</u>, 350 F. App'x 389, 392 (11th Cir. 2009); <u>Brannon v. Bellsouth Telecomms., Inc.</u>, 318 F. App'x 767, 770 (11th Cir. 2009).

This Court has considered all of the relevant factors, including the Social Security Administration's award of benefits to Oates, and determines that Sedgwick's decision was

not de novo wrong.[3] Sedgwick made its decision based upon the detailed and thorough reports of eminently qualified physicians and specialists who opined that Oates was capable of sedentary work.  In addition, Sedgwick relied upon a transferable skills analysis showing that, despite Oates's knee pain and other conditions, Oates would qualify for and be able to perform specific jobs with salaries ranging from $162,510.40 to $72,820.80.  As such, Oates was no longer disabled as that term is defined in the Plan.  This Court, standing in the shoes of Sedgwick, would have made the same determination that Sedgwick made.

Nonetheless, even assuming that the termination of benefits was de novo wrong, Walgreens would still prevail in this action.  There is no dispute that Sedgwick, the Claim Administrator, was vested with discretion in deciding Oates's claim.[4]  And there is no evidence from which to draw any inference that Sedgwick or Walgreens operated under a conflict

---

[3] The record also reflects that each of the independent physicians Sedgwick retained gave consideration to Dr. Kutner's evaluation. As noted, Dr. Kutner evaluated Oates in conjunction with the Social Security Administration's favorable benefits determination.

[4] The Plan states, "The authority granted to the Claim Administrator and the Plan Administrator to construe the Plan and make benefits determinations, including claims and appeals determinations, shall be exercised by them (or persons acting under their supervision) as they deem appropriate in their sole discretion." (AR 635).

of interest.  The Court decided at a hearing that no conflict of interest existed.  However, even if a conflict existed in this case, the Court finds that the decision to deny benefits would still be upheld.  The record demonstrates that Sedgwick provided a professional, conscientious, unbiased, and full and fair review of Oates's claim.  Had a conflict of interest existed, that conflict, considered as one of many relevant factors, would not render the benefits determination at bar arbitrary and capricious.  Regardless of which standard of review applies in this case, the Court would reach the same decision: that the termination of long-term disability benefits was correct.

3.   **Compliance with the Plan**

In addition to attacking the substance of the benefits determination, Oates contends that the Claim Administrator failed to comply with the technical requirements of the Plan by failing to issue the denial of benefits determination and the appeals determinations in a timely manner.  The Court rejects this argument after giving it due consideration.

The Court determines that Oates received a full and fair review of his benefits claim, which included a two-level appeals process and multiple opportunities for Oates to submit documentation in support of his claim.  Oates was represented

by counsel throughout the appeals process and the record reflects that the Claim Administrator cooperated with Oates's counsel.  Any delays by the Claim Administrator in providing written notice to Oates were minor.  These purported delays by the Claim Administrator in providing such written notice to Oates regarding the denial of his claim are not a basis for overturning the Claim Administrator's decision regarding the denial of long-term disability benefits.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  The Court **AFFIRMS** the termination of long-term disability benefits in this case.

(2)  The Clerk is directed to enter **JUDGMENT** in favor of Defendant and, thereafter, to **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of April, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record